**Winter, Liz**

| | |
|---|---|
| **From:** | Hollie Chandler [hchandler@rapllclaw.com] |
| **Sent:** | Wednesday, December 22, 2010 4:51 PM |
| **To:** | Wolfshohl, Joshua W. |
| **Cc:** | alfrick@brownsims.com |
| **Subject:** | Butcher #13297 |
| **Attachments:** | 12-22-10 WOLFSHOHL re summarized procedural history.doc.pdf; Doc No. 17 - Counterclaim.pdf; Doc No. 164 - Mt for Leave to file Amend Counterclaim against Superior.pdf; Doc No. 1 - Complaint.pdf |

Attached please find correspondence (RE: summarized procedural history) from Lawrence R. Plunkett, Jr. in connection with the above matter.


Thank you,

Hollie Chandler
*hchandler@rapllclaw.com*

Secretary to Lawrence R. Plunkett, Jr.
and Leah R. Rhodes
**REICH, ALBUM & PLUNKETT**
Two Lakeway Center, Suite 1000
3850 N. Causeway Boulevard
Metairie, Louisiana 70002
Telephone:  (504) 830-3999
Facsimile:  (504) 830-3950
*lplunkett@rapllclaw.com*
*lrhodes@rapllclaw.com*



**EXHIBIT 5**

# REICH, ALBUM & PLUNKETT, L.L.C.

ATTORNEYS AT LAW
TWO LAKEWAY CENTER, SUITE 1000
3850 N. CAUSEWAY BOULEVARD
METAIRIE, LOUISIANA 70002

LAWRENCE R. PLUNKETT, JR.

December 22, 2010

TEL.: (504) 830-3999
FAX: (504) 830-3950
lplunkett@rapllclaw.com

**Via Email – jwolfshohl@porterhedges.com**

Joshua W. Wolfshohl, Esq.
PORTER & HEDGES, LLP
Reliant Energy Plaza
1000 Main Street, 36th Floor
Houston, TX 77002

      **RE:**   **Noel Butcher v.**
           **Superior Offshore International, LLC**
           **USDC-EDLA**
           **CA #07-8136 c/w 10-2826 c/w 10-4044, Section "R"(5)**
           **Our File:  13297/RSR**

Dear Joshua:

It was a pleasure speaking with you regarding the captioned matter.  This correspondence summarizes the procedural history of the captioned matter and Triumph Marine's present desire to obtain service on Superior for the purpose of having the underwriters who were previously defending Superior on the contractual liability claim asserted by Triumph again appear in this matter.

This litigation arises out of an incident that allegedly occurred in June 2005 when plaintiff, an employee of Superior Offshore, alleges he was injured on a job for Marlin Energy. Plaintiff sued various entities, including Superior, who was subsequently dismissed based on the protections available to it under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §901 *et seq.*  Our client, Triumph Marine, Inc. was the owner of the liftboat being used by Superior to conduct its operations.  Triumph was also made a defendant in this matter.

During the course of discovery, Superior stated that it was working pursuant to a Master Service Agreement with Marlin Energy.  Based on the indemnity provision in that agreement, a Counterclaim was filed against Superior on behalf of Triumph.  (Attached is a copy of that pleading.)  Later in the litigation, a Marlin corporate representative testified that Superior was not working directly for Marlin, but rather working for C.W. Technical Services, Marlin's company man on the job.

December 22, 2010
Page 2

As a result of Marlin's revelation regarding the contractual situation, Superior filed a Motion for Summary Judgment seeking dismissal of Triumph's Counterclaim for contractual defense, indemnity, and insurance coverage on the basis that the contractual provisions cited in the original Counterclaim did not apply based on the newly discovered facts. Triumph did not oppose the Motion for Summary Judgment, but did seek to amend its pleadings to assert a claim under the "additional indemnities" provision of the contract between Marlin and Superior. (Attached is a copy of the Motion to Amend and the proposed pleading.) The Motion for Summary Judgment was heard by Judge Vance on September 29, 2010, the same day Magistrate Judge Chasez was to hear the Motion to Amend the Counterclaim. Finding that the Motion for Summary Judgment was well founded, Magistrate Judge Vance granted Superior's Motion and dismissed Triumph's Counterclaim, without considering the proposed amendment. Because the Counterclaim was dismissed prior to the hearing on the amendment, the amendment became moot, despite our advising Judge Vance that we intended to simply file a new lawsuit asserting the contractual rights under the "additional indemnities" provision. Had Judge Vance waited to rule on the Motion for Summary Judgment until after the Motion to Amend was heard, there likely would have not been any need to serve Superior as it would have remained a Counterclaim defendant to Triumph. Because Superior was dismissed, it is now necessary to serve Superior with the new suit.

Attached hereto is a copy of the new suit we filed on Triumph's behalf seeking contractual defense and indemnity pursuant to the "additional indemnities" provision of the contract between Marlin and Superior. This is the suit that Malcolm Lovett, the Plan Agent, received along with a Rule 4 Service Waiver Request. A copy of that Service Waiver Request is also attached herewith. This suit has now been consolidated with the original action.

At this time we are simply seeking to have Superior appear in this litigation through counsel appointed by its contractual liability underwriters, as they seamlessly did from the filing of the Counterclaim through September 29, 2010. (We note that a Proof of Claim was filed in Superior's bankruptcy proceedings on behalf of Triumph in connection with the claim for defense and indemnity on or about June 30, 2009.)

At this time, we would appreciate you arranging to have Mr. Lovett execute the Waiver and place its underwriters on notice. Lisa Africk, previous counsel for Superior in connection with the contractual aspect of this matter, is receiving a copy of this correspondence.

December 22, 2010
Page 3

If you have any questions regarding this matter, please do not hesitate to contact us.

With kind regards, we remain

Sincerely,
**REICH, ALBUM & PLUNKETT, L.L.C.**

Lawrence R. Plunkett, Jr.

LRP/hc
cc:     Lisa Africk, Esq. (*Via Email – alfrick@brownsims.com*)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NOEL BUTCHER | * | CIVIL ACTION NO. 07-8136 |
| | * | |
| | * | |
| VS. | * | SECTION "T" MAG. 5 |
| | * | |
| SUPERIOR OFFSHORE | * | JUDGE G. THOMAS PORTEOUS, JR. |
| INTERNATIONAL, LLC | * | |
| | * | MAGISTRATE |

**********************************************************************

## COUNTERCLAIM

    **NOW INTO COURT,** through undersigned, counsel, comes third party defendant, TRIUMPH MARINE, INC. (hereinafter referred to as "Triumph"), who assuming the status of third party plaintiff, files this Counterclaim against Superior Offshore International, LLC ("Superior") and who upon information and belief, avers as follows:

I.

    Made third-party defendant is Superior Offshore International, LLC, who is a direct defendant in the underlying suit and who has made an appearance herein.

II.

    At all material times, third party defendant, Superior, was the employer of plaintiff, Noel Butcher.

III.

On or about October 21, 2004, third party defendant, Superior, entered into a Master Work Contract with Marlin Energy Offshore, LLC.

IV.

On or about June 25, 2005, plaintiff, Noel Butcher, an employee of Superior, alleges he was injured while in the course and scope of employment with Superior.

V.

At all material times, Superior was operating pursuant to the Master Work Contract with Marlin Energy Offshore, LLC.

VI.

As a result of the alleged incident of June 25, 2005, plaintiff, Noel Butcher, filed the above-captioned lawsuit against Superior.   Superior thereafter filed a third-party complaint against Triumph wherein Superior tendered Triumph as a direct defendant to plaintiff pursuant to Federal Rule of Civil Procedure 14(c) and has sought defense, indemnity and contribution and/or recovery from Triumph for any injury/damages recovered by plaintiff.   Triumph filed responsive pleadings to Superior's third-party complaint and Triumph incorporates the allegations heretofore raised by it in these responsive pleadings, by reference hereto, as of copied verbatim and *in extenso*.

VII.

Pursuant to the terms and conditions of the Master Work Contract, Superior is obligated to defend and indemnify Triumph for the claims asserted in the Third Party Complaint brought by Superior.

VIII.

Pursuant to the terms and conditions of the Master Work Contract, Superior is obligated to procure various policies of insurance naming Triumph as an additional insured and waiving the right of subrogation against Triumph, providing coverage to Triumph for claims asserted herein, among other things.

IX.

Triumph tendered its defense and indemnity to Superior, but that tender, to date, has not been accepted.

X.

Triumph requests a trial by jury.

XI.

Triumph specifically reserves the right to amend this pleading once discovery is complete.

WHEREFORE, after due proceedings had, Triumph Marine, Inc. prays that there be judgment herein and its favor and against Superior Offshore International, LLC; that Superior Offshore International, LLC be cast in judgment and obligated to undertake the defense and to fully indemnify Triumph Marine, Inc. for claims asserted by plaintiff, Noel Butcher, for all attorney's fees, costs, and other expenses incurred by Triumph herein.  Triumph Marine, Inc. further prays for all such other relief allowed by law in contract and all general and equitable relief as the Court may deem just under the circumstances.

Respectfully submitted,

**REICH, ALBUM & PLUNKETT, L.L.C.**

**/s/ ROBERT S. REICH**
**ROBERT S. REICH (#11163)**
**MICHELLE L. MARAIST (#21739)**
1000 Two Lakeway Center
3850 North Causeway Boulevard
Metairie, Louisiana  70002
Telephone:  (504) 830-3999
Telefax:  (504) 830-3950
*Counsel   for   third   party   defendant,   Triumph Marine, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing pleading has been served on all counsel of record to this proceeding, via hand delivery, facsimile transmission, or electronic delivery, or by placing same in the U.S. mail, postage prepaid and properly addressed, this 14th day of February 2008.

**/s/ROBERT S. REICH_____**

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NOEL BUTCHER | * CIVIL ACTION NO. 07-8136 |
| | *               c/w 10-2826 |
| VS. | * SECTION "R" MAG. 5 |
| | * |
| SUPERIOR OFFSHORE | * JUDGE SARAH S. VANCE |
| INTERNATIONAL, LLC | * |
| ************************************ | * MAGISTRATE ALMA L. CHASEZ |

## MOTION FOR LEAVE TO FILE AMENDED
## COUNTERCLAIM AGAINST SUPERIOR OFFSHORE INTERNATIONAL, LLC

NOW INTO COURT, through undersigned counsel comes defendant, Triumph Marine, Inc. ("Triumph"), and moves this Court for an Order permitting it to file the accompanying Amended Counterclaim against Superior Offshore International, LLC, all for the reasons more fully set forth in the accompanying Memorandum. Counsel for Superior Offshore International, LLC has been contacted and objects to the filing of the Amended Counterclaim. No other counsel objected to the filing of this Motion. The granting of this Motion will not affect the trial date of this matter.

1

Respectfully submitted,

**REICH, ALBUM & PLUNKETT, L.L.C.**

/S/ ROBERT S. REICH
**ROBERT S. REICH (#11163)**
**LAWRENCE R. PLUNKETT, JR (#19739)**
1000 Two Lakeway Center
3850 North Causeway Boulevard
Metairie, Louisiana 70002
Tel: (504) 830-3999
Fax: (504) 830-3950
Email – rreich@rapllclaw.com
       lplunkett@rapllclaw.com
*Attorneys for defendant,*
*Triumph Marine, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing pleading has been served on all counsel of record to this proceeding, via hand delivery, facsimile transmission, or electronic delivery, or by placing same in the U.S. mail, postage prepaid and properly addressed, this 14th day of September 2010.

/S/ ROBERT S. REICH

2

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NOEL BUTCHER | * CIVIL ACTION NO. 07-8136 |
| | *                 c/w 10-2826 |
| VS. | * SECTION "R" MAG. 5 |
| | * |
| SUPERIOR OFFSHORE | * JUDGE SARAH S. VANCE |
| INTERNATIONAL, LLC | * |
| ************************************** | * MAGISTRATE ALMA L. CHASEZ |

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIM AGAINST SUPERIOR OFFSHORE, LLC

**MAY IT PLEASE THE COURT:**

Triumph Marine, Inc. (hereinafter referred to as "Triumph") files the instant Memorandum in Support of its Motion to file an Amended Counterclaim against Superior Offshore International, LLC ("Superior").

As the Court is aware, until the corporate deposition of Marlin Energy, LLC and Marlin Energy Offshore, LLC. ("Marlin") taken on August 12, 2010, both Superior and Marlin had represented throughout this litigation that at the time of the incident, Superior was working pursuant to a Master Service Contract with Marlin dated October 21, 2004.[1]  Triumph filed a

---

[1] Exhibit "A".

1

Counterclaim against Superior arguing that it is entitled to contractual defense and indemnity from Superior based on the contract between Superior and Marlin.[2]

It was only at the deposition and in a subsequent Supplemental Memorandum in Support of a Motion for Summary Judgment that Marlin claimed that Superior was not working for it, but rather working for another Marlin contractor, C.W. Technical Services, Inc. ("C.W.").[3] Superior has now filed a Motion for Summary Judgment arguing that it does not owe Triumph contractual defense, indemnity, and insurance coverage based on the fact that it was working for C.W. and not Marlin.[4]

In reviewing the Superior/Marlin contract, however, Paragraph 12 ADDITIONAL INDEMNITY of that contract provides:

> In addition to being applicable to the times when Contractor is performing services for MARLIN or its duly authorized representatives, the terms and provisions hereof and the covenants, warranties, and indemnities of Contractor contained herein shall also be applicable to and operate in favor of MARLIN where Contractor is working on the same job as MARLIN, even when Contractor has not been hired by MARLIN or its duly authorized representatives.[5]

Triumph contends that the while Superior may not have been working for Marlin at the time of this incident and, therefore the original indemnity provision under which Triumph found its claim may not apply, the additional indemnity provision in Paragraph 12 does apply to provide Triumph with contractual defense, indemnity, and insurance coverage. Therefore, Triumph seeks to file the accompanying Amended Counterclaim against Superior to assert the indemnity and defense available to it under Paragraph 12.

---

[2] Record Doc. No. 17.
[3] Record Doc. No. 153 at p. 5.
[4] Record Doc. No. 140.
[5] Exhibit "A".

### ARGUMENT

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent, or the Court's leave. The Court should freely give leave when justice so requires."[6] In exercising its discretion to grant or deny leave to amend, the Court may consider whether the party seeking leave is doing so after undo delay, in bad faith, or for dilatory motive.[7]

In the instant case Triumph is seeking to amend its Counterclaim against Superior only after the out of the blue revelation from Marlin that it did not contract with Superior and after receiving the September 9, 2010 Affidavit of Curtis Walley, the president of C.W.[8] Superior has yet to be able to produce any evidence on its own of its contractual status on this job other than its original position that it was working pursuant to the October 21, 2004 Master Service Agreement and is now relying on Marlin and C.W. to establish its contractual status.

Triumph has not unduly delayed nor is it acting in bad faith in seeking to amend the Counterclaim to assert the benefits of Paragraph 12 of the Master Service Contract. Further, the granting of this Motion will put Superior in no different position than it has been since the filing of the Counterclaim inasmuch as Superior has all along been aware that Triumph is seeking contractual defense and indemnity pursuant to the Master Service Contract between Superior and Marlin. Now Triumph simply seeks the benefits of the contractual indemnity via the "additional indemnity" found in Paragraph 12.

For these reasons, Triumph respectfully requests this Court grant the Motion to Amend the Counterclaim and permit the accompanying Amended Counterclaim to be filed into the record.

---

[6] Fed. R. Civ. Proc. 15(a)(2).
[7] See, *Jamieson By and Through Jamieson v. Shaw,* 772 F.2d 1205, 1208 (5th Cir. 1985).
[8] Exhibit "B".

## CONCLUSION

It is undisputed that throughout this litigation and until the time of Marlin's deposition, Superior represented that it was working under contract to Marlin. It was only after that deposition that it was learned by anyone in this case that Superior was working for C.W. rather than Marlin. Therefore the original allegation regarding the appropriate indemnity paragraph may not valid. However, the contract under which Triumph asserted its claim against Superior still applies by way of Paragraph 12 cited above. Therefore, Triumph respectfully requests the Court permit it to amend the Third-Party Complaint to add an allegation regarding the indemnity provided for under Paragraph 12.

Respectfully submitted,

**REICH, ALBUM & PLUNKETT, L.L.C.**

**/S/ ROBERT S. REICH**
**ROBERT S. REICH (#11163)**
**LAWRENCE R. PLUNKETT, JR (#19739)**
1000 Two Lakeway Center
3850 North Causeway Boulevard
Metairie, Louisiana 70002
Telephone: (504) 830-3999/Fax: (504) 830-3950
Email – rreich@rapllclaw.com
         lplunkett@rapllclaw.com
**Attorneys for defendant, Triumph**
**Marine, Inc.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing pleading has been served on all counsel of record to this proceeding, via hand delivery, facsimile transmission, or electronic delivery, or by placing same in the U.S. mail, postage prepaid and properly addressed, this 14th day of September 2010.

**/S/ ROBERT S. REICH**

4

## MASTER SERVICE AGREEMENT

Date: October 21, 2004

THIS MASTER SERVICE AGREEMENT (the "Contract"), made and entered into on the above date, by and between MARLIN ENERGY OFFSHORE, L.L.C., a Delaware limited liability corporation, (which shall include its parent company, affiliates, subsidiaries, officers, directors and employees) hereinafter referred to as ("MARLIN"), and Contractor, Superior Diving, hereinafter referred to as "Contractor".

### WITNESSETH:

### 1. WORK TO BE PERFORMED

In consideration of the service or work which has been performed and is to be performed by Contractor, as herein contemplated, and in consideration of the payments which have been made and are to be made by MARLIN therefor, it is contemplated that Contractor will, from time to time, be requested by MARLIN, through its duly authorized representatives, to perform certain work or furnish certain services to MARLIN. The jobs contemplated are any such work or services performed by Contractor in the scope of its usual business. Contractor will begin each particular job at such time as is agreed upon between Contractor and MARLIN's representative and, once having commenced any such job, Contractor will perform all such services or work with due diligence and in a safe, good and workmanlike manner, in accordance with all laws, regulations and rules valid and applicable, and to the full and complete satisfaction of MARLIN. It is specifically understood that all services and work shall be performed subject to all of the terms and conditions of this Contract. This Contract shall become effective and operative on the date first written above or on the date when Contractor first commenced any work or services for MARLIN or first provided goods, equipment or facilities to MARLIN, whichever first occurred, and even though this Contract may not then have been reduced to writing.

This Master Service Agreement does not obligate MARLIN to order work from Contractor, nor does it obligate Contractor to accept orders for work, but it shall control and govern all work accepted by Contractor and shall define the rights, obligations and liabilities of MARLIN and Contractor during the term hereof with respect to the matters covered hereby.

### 2. INDEPENDENT CONTRACTOR

It is expressly understood that Contractor shall be and is an independent contractor and that neither Contractor nor Contractor's principals, partners, employees, or subcontractors, are servants, agents or employees of MARLIN. MARLIN is interested only in the results obtained and has only the general right of inspection and supervision in order to secure the satisfactory completion of any work or services. Contractor shall assign qualified personnel to carry out the operations. MARLIN shall not have the right to control or direct the details of the

EXHIBIT
"A"

1

work performed by Contractor. As an independent contractor, Contractor agrees to comply with all laws, rules and regulations, whether federal, state or municipal, which now or in the future may be applicable to all service or work performed hereunder or applicable to Contractor's business, equipment or employees engaged in or in any manner connected with its performance hereunder. Further, Contractor, as an independent contractor, assumes full responsibility for loss of or damage to its materials, machinery, equipment (including, but not limited to, vessels) or other property while performing hereunder, provided that Contractor's responsibility for loss of or damage to materials which are the subject of a sale to MARLIN shall cease upon delivery of such material to MARLIN's drilling rig, well site or other job site, or other point of delivery as specified by MARLIN. MARLIN transportation of Contractor's personnel by any means (helicopter, vessel, etc.) outside of regularly scheduled personnel transfers shall be at the sole cost of Contractor, regardless of whether such transportation is made at the directive or discretion of MARLIN. Contractor specifically releases MARLIN, its agents, servants, employees, co-lessees and co-owners from liability for damage to any of Contractor's material, machinery, equipment (including, but not limited to, vessels), or other property, whether such damage is caused by MARLIN's negligence or otherwise.

In all cases where Contractor's employees (defined to include Contractor's direct, borrowed, special or statutory employees) are covered by the Louisiana Workers' Compensation Act, La. R.S. 23:1021 et seq., MARLIN and Contractor agree that all work and operations performed by Contractor and its employees pursuant to this Contract are an integral part of and are essential to the ability of MARLIN to generate MARLIN's goods, products and services for purposes of La. R.S. 23:1061 (A) (1). Furthermore, MARLIN and Contractor agree that MARLIN is the statutory employer of Contractor's employees for purposes of La. R.S. 23:1061 (A) (3). Irrespective of MARLIN's status as the statutory employer or special employer (as defined in La. R.S. 23:1031 (C) of Contractor's employees, Contractor shall remain primarily responsible for the payment of Louisiana Workers' Compensation benefits to its employees and shall not be entitled to seek contribution for any such payments from MARLIN.

## 3. INSURANCE

Contractor agrees to procure, maintain and amend, at its sole expense, and require all of Contractor's subcontractors of every tier to procure, maintain and amend at their sole expense, policies of insurance in the amounts outlined on that certain document attached hereto as Exhibit "A", which may from time to time be changed in accordance with MARLIN's request as its needs and requirements change, which coverage shall fully address the liabilities assumed hereunder.

Contractor shall furnish to MARLIN, on forms supplied by MARLIN, certificates of insurance evidencing the fact that proper insurance has been secured and no work shall be commenced unless the certificates have been furnished to and are on file with MARLIN. MARLIN may withhold payment to Contractor hereunder for any work performed prior to the date on which Contractor shall have furnished MARLIN certificate(s) of insurance. Upon request

2

by MARLIN, Contractor shall also provide copies of any or all of the required policies or endorsements. Such insurance policies and certificates must provide that at least thirty (30) days prior written notice will be mailed to MARLIN if the policies are materially changed or canceled and, upon receipt of such notice, MARLIN shall have the right to promptly cancel this Contract without waiting for the period provided in Section 8 below. Said policies shall further contain endorsements naming MARLIN as an additional insured under said policies and waive the underwriters' rights of subrogation in favor of MARLIN, its co-lessees or joint venturers.

Irrespective of the requirements as to the insurance to be carried by Contractor, the insolvency, bankruptcy, or failure of any insurance company carrying insurance for Contractor, or any subcontractor of any tier, or failure of any insurance company to pay claims accruing shall not be held to waive any of the provisions of this Contract. Further, the items of liability shown for each of the insurance coverages to be provided by Contractor, as well as by all subcontractors of every tier, shall not be deemed to constitute a limitation of Contractor's or subcontractor's liability for claims and actions.

## 4. INDEMNITY

(a)    For the purposes of this Section, any reference to MARLIN shall include MARLIN, its parent company, its affiliates, subsidiaries and any or all co-lessees of MARLIN who wholly or partially bear the cost of operations hereunder and any and all agents, directors, officers, employees, invitees, contractors (other than the Contractor herein) and subcontractors or servants of MARLIN or such co-lessees, or any or all of such parties.

(b)    Contractor shall be responsible, and MARLIN shall never be liable, for property damage suffered by any person, firm or corporation, or personal injury to or death of any person, including, but not limited to, Contractor, any of Contractor's employees or the employees of Contractor's subcontractors, and Contractor agrees to defend, indemnify and hold harmless, MARLIN, against any and all such claims, demands, losses or suits (including, but not limited to, claims, demands, or suits for property damage, bodily injury, illness, disease, death or loss of services, property or wages) which may be brought against MARLIN by any party, including but not limited to , any employee of Contractor, subcontractor of Contractor, or by any employee of subcontractor of Contractor, or the legal representative or successor of any such employee, in anywise arising out
of or incident to the work to be performed under this Contract by Contractor, or Contractor's subcontractors, or Contractor's presence in, on or about MARLIN's property or job site, irrespective of whether such claims, demands or suits are based on the relationship of master and servant, third party, or otherwise, and even though occasioned, brought about, caused by, arising out of or resulting from Contractor's work, or its acts, activities, or presence on any location, structure or vessel, or travel to and from such location, structure or vessel, the unseaworthiness or unairworthiness of vessels or craft, or the negligence or strict liability, in whole or in part, of MARLIN, or the contractual liability of MARLIN, or by or from any other means, relationship or cause, without limitation whatsoever.

3

By way of illustration, but not by way of limitation, with respect to whom shall be considered an employee, any person who is on Contractor's payroll and receives, has received or is entitled to receive payment from Contractor in connection with the work performed or to be performed hereunder shall be the employee of Contractor, even though MARLIN reimburses Contractor for the amount paid or to be paid such employee. Contractor further agrees to investigate, handle, respond to, provide defense for, and defend any such claim, demand, or suit at its sole expense, and agrees to bear all other costs and expenses related thereto, even if it is groundless, false or fraudulent, but Contractor may make such investigation, negotiation and settlement of any such claim, demand or suit as it deems expedient.

(c)     Contractor shall defend, indemnify and hold MARLIN harmless from and against any and all loss, damage, liability, and expense arising from infringement or alleged infringement of patents covering or pertaining to apparatus, equipment and materials owned, furnished, or utilized by Contractor in its operations during the progress of work hereunder.

(d)     MARLIN shall notify Contractor immediately of any claim, demand, or suit that may be presented to it by any party affording Contractor full opportunity to assume the defense of such claim, demand, or suit, and to protect MARLIN and itself under the obligations of this Section.

(e)     Contractor declares that it is aware that MARLIN has executed contracts with other parties, under the provisions of which MARLIN has agreed to indemnify and hold harmless and defend such parties with respect to the circumstances and the parties more particularly referred to in said contracts. Contractor hereby assumes the total liability of MARLIN with respect to such indemnifications insofar as same may bear upon, relate to, result from or arise out of the work to be performed by Contractor, any subcontractor of Contractor and their respective employees under the provisions of this Contract.

## 5. SUBCONTRACTING

In the event Contractor subcontracts any of the work to be performed or services to be rendered hereunder, or contracts for the furnishing of any services or material required to be furnished by a subcontractor, then such contracts shall contain releases of liability for damage to property of such subcontractor, insurance requirements, and a hold harmless provision equivalent to Sections 2, 3 and 4 above. Unless such contracts contain such equivalent provisions, any personnel engaged and property used in the furnishings of such services or work shall be deemed employees and property of Contractor for the purpose of Sections 2, 3 and 4 set forth above and for the purposes of all other provisions of this Contract.

## 6. PAYMENT

Within sixty (60) days after the acceptance by MARLIN of Contractor's invoice therefor as fully complied with all specifications and requirements of this Contract, MARLIN shall pay Contractor for the appropriate work, services, goods, equipment or facilities delivered as requested by MARLIN. Such payment by MARLIN of Contractor's invoices shall be without

4

prejudice to MARLIN's rights subsequently to challenge the correctness thereof. Contractor shall maintain a complete and correct set of records pertaining to all aspects of this Contract, including the performance hereof by Contractor. MARLIN shall have the right, at MARLIN's sole expense, to inspect and audit any and all such records within a period of two (2) years after the termination of work or services performed under this Contract; provided, however, that Contractor shall have the right to exclude any trade secrets, formulae or processes from such inspection and audit. Notwithstanding the approval for payment of any invoices submitted, MARLIN shall have the right to withhold any payments thereon until Contractor shall have furnished (i) verification of work or services performed satisfactory to MARLIN, (ii) verification of performance satisfactory to MARLIN of all goods, equipment and facilities to which such payment relates, (iii) proof that all claims against Contractor by Contractor's suppliers and subcontractors for labor, goods, equipment and facilities of any kind furnished in connection with Contractor's obligations under this Contract have been fully paid and satisfied, and (iv) proof that all liens and privileges of Contractor's suppliers and subcontractors arising out of work or services performed or goods, equipment and facilities furnished in connection with Contractor's obligations under this Contract have been fully released.

## 7. LIENS

Contractor shall pay promptly any and all amounts owing by it for work performed, services rendered, or materials furnished in connection with jobs performed under this Contract so that no lien shall ever attach, or be permitted to attach, to MARLIN's property, whether real or personal, and Contractor hereby agrees to defend, indemnify and hold MARLIN harmless from and against all such claims or liens and all expenses incurred by MARLIN in connection therewith (including reasonable attorneys' fees). Contractor shall not file nor shall allow any lien to be filed against MARLIN's property under any circumstances. In the event any claims are made or liens filed against MARLIN or any of its property or equipment, MARLIN shall have the right of set-off against any amounts then due and owing or which may subsequently become due and owing to Contractor.

## 8. TERM

This Contract will continue in full force and effect until terminated by either party so that Contractor may perform, from time to time, such work and/or render such services as the parties mutually may agree: it being understood and agreed that either party hereto may cancel this Contract by giving the other party ten (10) days written notice of such cancellation, but neither party hereto shall, by the termination of this Contract, be relieved of its respective obligations and liabilities arising from or incident to work or services performed or in progress hereunder prior to the time this Contract is terminated. Notwithstanding anything herein to the contrary, MARLIN shall have the option, but not the obligation, to declare this Contract terminated effective immediately in the event Contractor fails to comply with any of the provisions hereof.

5

## 9.  COMPLIANCE WITH APPLICABLE LAWS--SAFETY

All of the provisions of this Contract shall be expressly subject to all of the applicable laws, orders, rules and regulations of any governmental body or agency having jurisdiction in the premises, and all operations or conduct contemplated hereunder shall be conducted in conformity therewith.  Any provision of this Contract which is inconsistent with any such laws, orders, rules or regulations shall be modified so as to conform therewith, and this Contract, as so modified shall continue in full force and effect.  MARLIN and Contractor shall execute such documents, purchase orders and other instruments as may be reasonably required to conform with laws or orders.

Safe operations are of paramount importance to MARLIN.  Accordingly, MARLIN has established a safety program for its own employees and requires that all of its Contractors have an appropriate safety program.  Contractor agrees to provide MARLIN with any reasonable information requested for MARLIN's internal use in evaluating the safety record of Contractor.  MARLIN agrees that it shall not reveal any of such safety information to any other party.

Further, MARLIN has established certain safety rules and regulations and expects not only that its own employees shall abide by such rules and regulations, but requires that its Contractors and their employees comply with such rules and regulations as well.  In order to effectuate these safety goals, Contractor agrees as follows:

(a)  Contractor shall comply with all applicable local, State and Federal safety regulations.  These rules and regulations include, but are not limited to, regulations of the United States Coast Guard and the United States Minerals Management Service.  Further, Contractor shall comply with the existing posted MARLIN safety rules and to any changes in those rules as they may be made from time to time in the future.

(b)  Contractor shall make a planned, continuing effort to eliminate accidents due to human error.  This effort shall include the training of personnel in operational aspects of their functions and the establishment of a program to instill in each individual at the worksite a conscious desire to conduct safe and pollution-free operations.  Contractor shall establish and continue to maintain a training program in compliance with applicable local, State and Federal laws, rules and regulations.  Contractor warrants that all of its employees at the worksites have satisfactorily completed a safety course meeting the requirements of this paragraph, and that each of its employees understands all of MARLIN's safety rules and emergency procedures, as well as all other applicable laws and regulations relating to safety.  Contractor warrants that each of its employees has received or shall receive immediately upon arrival sufficient training to be able to utilize and operate properly all safety equipment at the worksite.  Contractor also warrants that it has trained each of its employees to perform his assigned work in a

6

safe and competent manner so that the employee's actions do not endanger himself/herself or others.

(c) When Contractor's employees report to the worksite, they shall immediately familiarize themselves with any posted safety rules of MARLIN, emergency procedures and other safety requirements.

(d) Contractor warrants that any equipment brought to the worksite by it has been inspected, tested and properly maintained and that such equipment is free from defects, latent or patent, and is fit for its intended use.

(e) Should Contractor engage any subcontractor to perform work at the worksite, Contractor warrants that the subcontractor has complied or shall comply immediately upon arrival with the safety requirements of this Section 9.

### 10. CONFLICT

Should the parties hereto enter into any future formal written contract, including but not limited to, purchase orders especially prepared to provide for a particular job to be done by Contractor, then in the event any term of such contract conflicts with the terms of this Contract, the terms of this Contract shall prevail with respect to such conflict. No parol agreement of whatsoever nature entered into between MARLIN's representative or representatives and Contractor shall ever be deemed to alter or affect the provisions of this Contract.

### 11. FAIR AND EQUAL EMPLOYMENT AND CONTRABAND POLICY

Contractor executes simultaneously with this Contract, and agrees to maintain in a current status during the life of this Contract, the Equal Employment Opportunity Compliance Certificate (attached hereto as Exhibit "B") and the Marlin Energy Offshore, L.L.C. Contraband Control Policy (attached hereto as Exhibit "C") which are supplemental to Marlin Energy Offshore, L.L.C. contracts, purchase orders and sales agreements.

### 12. ADDITIONAL INDEMNITY

In addition to being applicable to the times when Contractor is performing services for MARLIN or its duly authorized representatives, the terms and provisions hereof and the covenants, warranties and indemnities of Contractor contained herein shall also be applicable to and operate in favor of MARLIN where Contractor is working on the same job as MARLIN, even when Contractor has not been hired by MARLIN or its duly authorized representatives.

7

### 13.  NOTICES

All notices, reports and other correspondence required or made necessary by the terms of this Contract shall be deemed to have been properly served when furnished in writing and received by the addressee at the address hereinafter listed, via:

#### Services and Notices

Marlin Energy Offshore, L.L.C.
3861 Ambassador Caffery Parkway, Suite 600
Lafayette, LA  70503
TELEPHONE:       (337) 769-0032
FAX:                    (337) 769-4340
Attention:  Vice President, Land

#### Bills and Invoices

Marlin Energy Offshore, L.L.C.
3861 Ambassador Caffery Parkway, Suite 600
Lafayette, LA  70503
Attention: Julie Thomas

#### (CONTRACTOR)

Company:      Superior Diving Company
Address:       221 Gunther Lane
City and State: Belle Chasse LA  70037
Attention:     Stephanie Johnson
Phone:          504-393-1596
Fax:             504-393-1828

### 14.  APPLICABLE LAW

This Contract shall be governed by the General Maritime laws of the United States.  In the event that it is ever judicially determined that the General Maritime laws of the United States are inapplicable, then this Contract shall be governed by the laws of the State of Louisiana.

### 15.  SEVERABILITY

In the event one or more of the provisions contained in this Contract shall be held, for any reason, to be invalid, void, illegal or unenforceable in any respect, such validity, voidness,

illegality or unenforceability shall not affect the remaining provisions hereof, and this Contract shall remain unaffected and shall be construed as if such invalid, void, illegal or unenforceable provision never had been contained herein.

## 16. WARRANTIES

In the event that Contractor hereunder primarily sells items, equipment, supplies, etc., to MARLIN with some support services incidentally associated with the said sale, Contractor specifically warrants the merchantability of the items being the subject of sale. Contractor warrants such items to be free of defects. In instances where MARLIN purchases from Contractor certain items with specification for a particular purpose and the requirements are given to Contractor, the latter warrants fitness for the particular purpose disclosed to Contractor.

## 17. WAIVER, MODIFICATION AND ASSIGNMENT

Any waiver, alteration or modification of any provisions of this Contract shall not be valid unless in writing and signed by the parties. Contractor may not assign this Contract without the prior written consent of MARLIN.

## 18. CONFIDENTIAL NATURE OF RECORDS

All information, data, reports and records pertaining to performance under the Contract shall be the sole and confidential property of MARLIN and shall not be disclosed, exhibited, nor the contents divulged by Contractor or Contractor's Personnel to any other person without MARLIN's prior written consent. Contractor shall not utilize for its own benefit or for the benefit of anyone other than MARLIN any information acquired as a result of the work performed hereunder for MARLIN. Contractor agrees that establishing actual compensatory damages for breach of this provision would be impractical to determine, therefore, in the event of a breach of this provision by Contractor, Contractor shall be liable to MARLIN for a stipulated sum equal to all sums paid by MARLIN to Contractor hereunder. The foregoing shall not in any way prohibit MARLIN from obtaining any restraining orders or injunctions against Contractor's continuing or anticipated disclosure of any such data, reports and records.

## 19. REPORTS OF ACCIDENTS

Contractor shall report by telephone to Randy E. Wheeler, MARLIN's Vice President, Land at (337) 769-4319 as soon as practicable all accidents and/or occurrences resulting in injuries to Contractor's employees or third parties, pollution of the environment or damage to property arising out of or during the course of the work or services performed for MARLIN by Contractor or by any subcontractors of Contractor and shall immediately furnish MARLIN with a copy of all reports made by Contractor to Contractor's insurer or to others of such accidents or occurrences.

## 20. REMOVAL OF WRECK AND DEBRIS

Contractor shall be responsible for, and liable for the cost of, removal of wreck and debris of any equipment, materials and/or supplies of any nature whatsoever transported by Contractor from any location, whether above or below the surface of the water. In the event such wreck and debris is not or cannot be removed, Contractor shall indemnify, defend, and hold MARLIN harmless from any liability to Contractor or any third party for damages resulting or arising from the existence or presence thereof.

IN WITNESS WHEREOF, the parties hereto have executed this Contract as of the date first above written, and warrant, individually, that they have the full right, power and authority to enter into this Contract on behalf of the respective parties hereto. This Contract is intended to supersede all other agreements, oral or written, heretofore made with respect to the subject matter hereof and the transactions contemplated hereby, and it contains the entire agreement of the parties, including without limitation all agreements with respect to warranties.

WITNESSES:

_____

_____

MARLIN ENERGY OFFSHORE, L.L.C.

BY: _Randy E. Wheeler_

TYPE OR PRINT: Randy E. Wheeler

TITLE: Vice President, Land

CONTRACTOR:

SUPERIOR DIVING COMPANY, INC.

BY: _Louis E. Schaefer_

TYPE OR PRINT: _Louis E. Schaefer Jr._

TITLE: _President_

10

**Marlin Energy Offshore, L.L.C.**
**3861 Ambassador Caffery, Suite 600**
**Lafayette, Louisiana 70503**

## EXHIBIT "A"

### INSURANCE REQUIREMENTS FOR
### ALL CONTRACTORS AND THIRD PARTY SERVICES

Every Contractor furnishing services must give Marlin Energy Offshore, L.L.C. evidence of the following listed minimum insurance coverages, limits and amounts:

A.   **Worker's Compensation Insurance**

In accordance with statutory requirements in the state(s) of operation.

**Employer's Liability Insurance**

- $1,000,000 per occurrence

In addition, Offshore Contractors must have the following coverage:

**Maritime Liability Insurance**

- $1,000,000 per accident or occurrence

Maritime operations policy shall be endorsed specifically to include the following coverages:

U.S. Longshoreman's and Harbor Workers' Compensation, including the Outer Continental Shelf Lands Act, full maritime endorsement, including Jones Act, Unseaworthiness, Death on the High Seas Act, and the General Maritime Laws for all employees including coverage for transportation, wages, maintenance, and cure. Also, coverage should be amended to provide for Voluntary Compensation Endorsement, In Rem Endorsement, Borrowed Servant Endorsement, Alternate Employer Endorsement, and All States Endorsement.

B.   **Comprehensive General Liability**

- $1,000,000 bodily injury and/or property damage combined, per occurrence and in the aggregate

-1-

Such policy shall be endorsed specifically to include the following coverages: Property damage arising from explosion, collapse or underground damage, products and completed operations for at least two years after completion of work, Seepage, Pollution and Contamination Coverage (including bodily injury, property damage, control, monitoring and cleanup costs), Contractual Liability, Contractor's Protective Liability, Care, Custody and Control exclusion eliminated, or in lieu of that, Broad Form Property Damage endorsement.

In addition to the above endorsements, maritime operations must have the following endorsements: Watercraft Exclusion eliminated, In Rem Endorsement, Coverage for diving operations (if diving operations are to be performed hereunder), and Extension of Territorial Limits Endorsement for Gulf of Mexico operations.

Where applicable, coverage shall be provided for liability resulting from consumption of food prepared by or served by contractors.

C.   **Comprehensive Automobile Liability**

>    -$1,000,000 bodily injury and/or property damage
>    combined, per occurrence and in the aggregate

Such policy shall be endorsed specifically to include owned, hired, and non-owned vehicles.

D.   **Hull and Machinery Insurance**

Such policy shall be sufficient to cover each vessel owned or boat owned by Contractor in connection with the operations under this Contract, to the actual value of each vessel and its equivalent. If any vessel shall engage in towing operations, said insurance shall include full Towers Liability with the Sistership Clause unamended. Any language in this policy which limits coverage to an insured who is not an owner or who is not entitled to limitation of liability shall be deleted.

E.   **Standard Protection and Indemnity Insurance**

Such coverage shall at least be equal to the value of each vessel owned or chartered (including Towers Liability where applicable) and Excess Protection and Indemnity and Towers Liability with a combined limit of not less than $1 million. Such insurance shall include coverage for the crews unless it is provided under Paragraph A above. Such insurance shall also be endorsed specifically to include the collision liability (unless

-2-

covered under the Hull Policy) coverage for diving operations (if diving operations are to be performed hereunder), and liability for seepage, pollution, containment, and cleanup.

F.     **Aircraft Liability Insurance**

In any operations requiring the use of aircraft and/or helicopters (unless provided by MARLIN) combined single limit insurance shall be maintained for public liability, passenger liability and property damage liability in an amount of not less than $1,000,000.00; this insurance shall cover all owned and non-owned aircraft, including helicopters, used by contract in connection with the performance of any work under this Contract.

G.     **Umbrella Liability**

-$5,000,000 combined single limit in excess of all
underlying policies.

Such umbrella liability coverage shall be in excess of items A, B, C, D, E and F above, and including all coverages which are included in the underlying insurances.

NOTE: AS TO ALL THE ABOVE POLICIES, IN THOSE CASES WHERE A CONTRACTOR DOES NOT HAVE THE ABOVE LIMITS PROVIDED BY THE REQUIRED POLICIES, BUT DOES HAVE UMBRELLA COVERAGE OR EXCESS COVERAGE, THEN THE COMBINED PRIMARY AND EXCESS COVERAGE MUST EQUAL OR EXCEED THE ABOVE REQUIRED LIMITS.

In addition to the above:

1.     All insurance coverages required as herein set forth shall be at the sole cost and expense of Contractor, and all deductibles shall be assumed by, for the account of, and at Contractor's sole risk.

2.     All insurance policies shall contain the provision that the insurance companies waive the right of subrogation against Marlin Energy Offshore, L.L.C., its agents, servants, invitees, employees or co-lessees, affiliated companies, contractors, subcontractors and their insurers.   In addition to the coverage listed herein, this waiver must be added by endorsement to all floaters or policies covering Contractor's property used to perform work under a contract with Marlin Energy Offshore, L.L.C.

-3-

3. All policies shall contain a specific endorsement naming Marlin Energy Offshore, L.L.C. and its co-lessees or joint venturers as additional assureds. The coverage afforded Marlin Energy Offshore, L.L.C. and its co-lessees or joint venturers shall be primary as to any other insurance carried by Marlin Energy Offshore, L.L.C. and its co-lessees or joint venturers, notwithstanding any "other insurance" clause(s) contained in Contractor's or any Marlin Energy Offshore, L.L.C. and its co-lessees or joint venturers respective policies.

4. All policies shall contain a provision that no cancellation or material change in the policies shall become effective except upon thirty (30) days written notice thereof to Marlin Energy Offshore, L.L.C. to the attention of Frank Willoughby at its address at 3861 Ambassador Caffery Parkway, Suite 600, Lafayette, Louisiana 70503.

5. All policies shall contain adequate territorial and navigation limits in order to cover the work to be performed by Contractor for Marlin Energy Offshore, L.L.C.

6. The requirement by Marlin Energy Offshore, L.L.C. that all Third Party Contractors and equipment owners and operators furnish certificates of insurance as evidence of certain minimum insurance coverages and policy amounts shall not be interpreted as in any way limiting the liability of any party who may contract or charter with Marlin Energy Offshore, L.L.C., nor insurance coverages, assume or intend to assume, any liability that it would not otherwise have in the absence of such requirements.

-4-

## EXHIBIT "B"

## EQUAL EMPLOYMENT OPPORTUNITY COMPLIANCE CERTIFICATE SUPPLEMENT TO MARLIN ENERGY OFFSHORE, L.L.C. CONTRACTS, PURCHASE ORDERS AND SALES AGREEMENTS

The undersigned "Contractor" agrees that as to all current contracts, purchase orders, and sales agreements as defined below, heretofore issued or entered into with MARLIN ENERGY OFFSHORE, L.L.C., its affiliates and subsidiaries, hereinafter referred to as "MARLIN" for the purchase or sale of gas, materials, supplies, or services by Contractor and as to each such contract, purchase order and sales agreement, as defined below, which may be hereafter issued or entered into between MARLIN and Contractor at any time within one (1) year following the date of this agreement, the contractor agrees to the provisions set forth and agrees that without further reference thereto the said provisions are and shall be automatically a part of and supplement to each such past and future contract, upon the Contractor, his successors and assigns, to the same extent, effect and purpose as if physically incorporated into such past and future contract, purchase order or sales agreement, and copies therein in extension.

For purposes of this Equal Employment Opportunity Compliance Certificate, the words "Contract", "Purchase Order" or "Sales Agreement" shall mean any agreement or arrangement between MARLIN and the Contractor for the purchase or sale of gas, materials, supplies, or services or for the use of real or personal property, including lease arrangements, which, in whole or in part are necessary to the performance of any one or more contracts between MARLIN and the United States of America or under which any portion of MARLIN's obligation under any one or more contracts is performed, undertaken, or assumed.

(A)    Contractor is aware of and is fully informed of Contractor's responsibilities under Executive Order 11246 and shall file compliance reports as required by Section 203 of Executive Order 11246 and otherwise comply with the requirements for such orders.

(B)    Contractor shall be bound by and agrees to the following provisions as contained in Section 202 of Executive Order 11246, to wit:

(1)    The Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, age, national origin or disability.  The

-1-

15

Contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, age, national origin or disability. Such action shall include, but not be limited to the following: employment, upgrading, demotion, or transfer, recruitment, or recruitment advertising; layoff or termination; rates of pay or other forms of compensation, and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this non-discrimination clause.

(2)     The Contractor will, in all solicitations and advertisements for employees placed by or on behalf of the Contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, age, national origin or disability.

(3)     The Contractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency contracting officer advising the labor union or workers' representative of the contractor's commitments under Section 202 of Executive Order No. 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(4)     The Contractor will comply with all provisions of Executive Order No. 11246 of September 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

(5)     The Contractor will furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(6)     In the event of the Contractor's non-compliance with the nondiscrimination clauses of this Contract or with any of such rules, regulations, or orders, this Contract may be canceled, terminated, or suspended in whole or in part and the Contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order No. 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

(7)     The Contractor will include the provisions of Paragraphs (1) through (7) in every subcontract or purchase order unless exempted by rules, regulations or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order No. 11246 of September 24, 1965, so

-2-

that such provisions shall be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions including sanctions for non-compliance: <u>Provided</u>, <u>however</u>, that in the event the Contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the contracting agency, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

(C)     And further, pursuant to the rules and regulations, if the value of the contract or purchase order exceeds $50,000 or the Contractor has 50 or more employees, Contractor will:

(1)     File, on an annual basis or within 30 days of accepting a new order, complete and accurate reports on Standard Form 100 (EEO 1) with the appropriate government agency (Section 1.7, Chapter 60, Title 41 of the Code of Federal Regulations).

(2)     Develop a written affirmative action compliance program to identify, correct and improve problem areas in the employment and utilization of minority and female personnel (Section 1.40, Chapter 60, Title 41 of the Code of Federal Regulations).

## <u>CERTIFICATION OF NON-SEGREGATED FACILITIES</u>

Contractor certifies that he does not maintain or provide for his employees any segregated facilities at any of his establishments, and that he does not permit his employees to perform their services at any location, under his control, where segregated facilities are maintained. He certifies further that he will not maintain or provide for his employees any segregated facilities at any of his establishments, and that he will not permit his employees to perform their services at any location, under his control where segregated facilities are maintained. Contractor agrees that a breach of this certification is a violation of the Equal Employment Opportunity Clause of this agreement. As used in this certification, the term "segregated facilities" means any waiting rooms, work areas, rest rooms and wash rooms, restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees which are segregated by explicit directive or are in fact segregated on the basis of race, creed, color, religion or national origin, because of habit, local custom or otherwise. He further agrees that (except where he has obtained identical certifications from proposed subcontractors for specific time periods) he will obtain identical certifications from proposed subcontractors prior to the award of subcontracts exceeding $10,000 which are not exempt from the provisions of Equal Employment Opportunity Clause; that he will retain such certification in his files; and that he

-3-

will forward the following notice to such proposed subcontractors (except where the proposed subcontractors have submitted identical certifications for specific time periods). NOTICE TO PROSPECTIVE SUBCONTRACTORS OF REQUIREMENT FOR CERTIFICATIONS OF NON-SEGREGATED FACILITIES. A certification of Non-Segregated Facilities, as required by the May 9, 1967 order on Elimination of Segregated Facilities, by the Secretary of Labor (32 Fed.Reg. 7439, May 19, 1967) must be submitted prior to the award of subcontract exceeding $10,000 which is not exempt from the provisions of the Equal Employment Opportunity Clause. The certification may be submitted either for each subcontract or for all subcontracts during a period (i.e., quarterly, semi-annually, or annually). (1968 MAR.) (Note: The penalty for making false statements in offers is prescribed in 18 U.S.C. 1001).

## CONTRACTOR AND SUBCONTRACTOR LISTING REQUIREMENT

The Contractor agrees to comply with the requirements of Executive Order 11701 and the rules and regulations issued thereunder, and that all employment openings of the contractor which exist at the time of the execution of this Contract and those which occur during the performance of this Contract, including those not generated by the contract and including those occurring at an establishment of the Contractor other than the one wherein the contract is being performed by excluding those of independently operated corporate affiliates, shall, to the maximum extent feasible, be offered for listing at an appropriate local office of the State employment service system wherein the opening occurs and to produce such periodic reports to such local office regarding employment openings and hires as may be required. Provided, that this provision shall not apply to openings which the contractor fills from within the contractor's organization or are filled pursuant to a customary and traditional employer-union hiring arrangement and that the listing of employment openings shall involve only the normal obligations which attach to the placing of job orders.

The Contractor agrees further to place the above provision in any subcontract directly under this Contract.

## MINORITY BUSINESS ENTERPRISE

Executive Order 11625 provides that it is the policy of the Government that minority business enterprises shall have the maximum practicable opportunity to participate in the performance of Government contracts.

The Contractor agrees to use his best efforts to carry out this policy in the award of his subcontracts in excess of $500,000 to the fullest extent consistent with the efficient performance of the contract. As used in the contract, the term "Minority Business Enterprise" means a

-4-

Case 08-32590   Document 2221-5   Filed in TXSB on 03/07/11   Page 33 of 48

OCT. 26. 2004  2:55PM   SUPERIOR DIVING BC LA                    NO. 418   P. 2
Case 2:07-cv-08138-SRD-ALC   Document 164-2   Filed 09/14/10   Page 19 of 21

business, at least 50 percent of which is owned by minority group members or, in the case of publicly owned businesses, at least 51 percent of the stock of which is owned by minority group members. For the purposes of this definition, minority group members are Negroes, Spanish-speaking American persons, American-Orientals, American-Indians, American Eskimos, and American Aleuts. Contractors may rely on written representations by subcontractors regarding their status as minority business enterprises in lieu of an independent investigation.

### EMPLOYMENT OF VETERANS AND INDIVIDUALS WITH DISABILITIES

Unless otherwise exempted, this purchase order is subject to the affirmative action provision of the Executive Order 11246, the Rehabilitation Act of 1973, the Vietnam Era Veterans Readjustment Act of 1974, and their implementing regulations (41 CFR 60-2, 41 CFR 60-250 and 41 CFR 60-741).

### IMMIGRATION REFORM AND CONTROL ACT

Contractor agrees to comply with the Immigration Reform and Control Act of 1986 and all rules and regulations adopted pursuant thereto which are now or may become applicable to the performance of work by Contractor. Contractor shall protect, defend and hold Marlin Energy Offshore, L.L.C. harmless and agrees to pay any and all costs, expenses, losses, claims, demands, suits (including attorney's fees), fines, penalties or judgments which may be asserted or assessed against Marlin Energy Offshore, L.L.C. as a result of or in connection with Contractor's use of employees or personnel in violation or alleged violation of such act.

Dated this _26_ day of _OCTOBER_, 2004

_SUPERIOR DIVING COMPANY, INC._
Name of Contractor

_Louis E. Schaefer_
Signature of Authorized
Representative for Contractor

_PRESIDENT_
Title of Authorized Representative

-5-

19

## EXHIBIT "C"

### MARLIN ENERGY OFFSHORE, L.L.C.
3861 Ambassador Caffery, Suite 600
Lafayette, Louisiana 70503
(337) 769-0032
Fax: (337) 769-4340

TO:        All Contractors and Vendors

RE:        Contraband Control Policy

Marlin Energy Offshore, L.L.C. has adopted a Contraband Control Policy to assure a safe working environment for both Marlin Energy Offshore, L.L.C. employees and the employees of its contractors.

Measures are being implemented to assure compliance with Company policy in this area. In addition to periodic contraband searches, we require Marlin Energy employees and other persons on Marlin Energy's premises to cooperate in urine drug screen tests, alcohol breath tests, and any other investigative examinations deemed necessary.

A copy of the notice summarizing Marlin Energy's policy on contraband control, which is posted at all Company locations, is attached for your reference. Please note the failure of your employees to comply and cooperate with this policy may cause cancellation of your contract with Marlin Energy.

As a contractor whose employees may frequently be on Marlin Energy's premises, we ask that you cooperate and participate in this program. Please advise your employees who will be working at Marlin Energy's locations of this program. Additionally, we ask that you also advise any of your subcontractors who may have reason to be on Marlin Energy's premises.

Please sign, date and return one (1) copy of this agreement indicating your acceptance of these terms and conditions for our records.

Clint P. Credeur
Vice President, Exploration & Production

Company: _Superior Diving Company_

By: _Louis E. Schayun_

Title: _President_

Date: _October 21, 2004_

STATE OF LOUISIANA

PARISH OF LAFAYETTE

## AFFIDAVIT

**BEFORE ME**, the undersigned Notary Public, personally came and appeared, Mr. Curtis Walley, who, after being duly sworn, did depose and state the following:

1.

Mr. Walley has reached the age of majority and resides in Lafayette Parish, Louisiana.

2.

Mr. Walley is the President and owner of CW Technical Services, Inc. and has personal knowledge of the facts stated herein.

3.

Mr. Walley affirmatively that there was never a written contract or Master Service Agreement between CW Technical Services, Inc. and Superior Diving Company, Inc., Superior Offshore Services, Inc. and/or any other related Superior entity.

_____
**CURTIS WALLEY**

SWORN TO AND SUBSCRIBED before me this __9__ day of __September__, 2010 in Lafayette, Louisiana.

_____
NOTARY PUBLIC

_Bryan Scofield   Bar # 19147_
Printed Name and Number

My Commission Expires: __Death__

EXHIBIT
"B"

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NOEL BUTCHER | * CIVIL ACTION NO. 07-8136 |
| | *             c/w 10-2826 |
| VS. | * SECTION "R" MAG. 5 |
| | * |
| SUPERIOR OFFSHORE | * JUDGE SARAH S. VANCE |
| INTERNATIONAL, LLC | * |
| ************************************* | * MAGISTRATE ALMA L. CHASEZ |

## O R D E R

IT IS HEREBY ORDERED, AJUDGED AND DECREED that considering the law and Motion of counsel, defendant, Triumph Marine, Inc. be and is hereby permitted to file the Amended Counterclaim against Superior Offshore International, LLC.

NEW ORLEANS, LOUISIANA, this _____ day of _____, 2010.

_____
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

Page 1 of 1

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NOEL BUTCHER | * CIVIL ACTION NO. 07-8136 |
| | *                c/w 10-2826 |
| VS. | * SECTION "R" MAG. 5 |
| | * |
| SUPERIOR OFFSHORE | * JUDGE SARAH S. VANCE |
| INTERNATIONAL, LLC | * |
| ************************************** | * MAGISTRATE ALMA L. CHASEZ |

### AMENDED COUNTERCLAIM

    **NOW INTO COURT** through undersigned counsel comes Triumph Marine, Inc. ("Triumph") and for its amendment to its Counterclaim[1] against Superior Offshore International, LLC ("Superior") avers upon information and belief as follows:

1.

    The entirety of the Counterclaim asserted by Triumph against Superior is adopted herein as if copied *in extenso.*

2.

    The original Counterclaim filed by Triumph is amended to add the following paragraphs:

---

[1] Record Doc. 17.

XII.

At the time of this incident in June 2005, there was in place a Master Work Contract dated October 21, 2004 between Superior and Marlin Energy Offshore, LLC ("Marlin").

XIII.

At the time of this incident involved herein, Superior alleges that it was working pursuant to a verbal agreement with C.W. Technical Services, Inc. ("C.W."), a contractor and representative of Marlin.

IV.

The October 21, 2004 Master Work Contract between Superior and Marlin provides in Paragraph 12 that the covenants, warranties, and indemnities of Superior apply not only when that contract is in force, but whenever Superior is performing services for Marlin or its duly authorized representatives, or is working on the same job as Marlin or, when it has been hired by Marlin's duly authorized representatives.

XV.

Pursuant to the October 21, 2004 Master Work Agreement, Triumph is entitled to defense and indemnity from Superior either because Superior was working directly for Marlin, was working on the same job as Marlin, was working on the same job as Marlin's duly authorized representative, or was performing services for Marlin's duly authorized representative, or was hired by Marlin's duly authorized representative.

XVI.

Pursuant to the terms of the Master Work Contract Superior is obligated to defend and indemnify Triumph for the claims asserted by plaintiff against Triumph.

XVII.

Triumph requests trial by jury.

XVIII.

**WHEREFORE** after due proceedings had, Triumph Marine prays that there by judgment herein in its favor and against Superior Offshore International, LLC; that Superior Offshore International, LLC be cast in judgment and obligated to undertake the defense and fully indemnify Triumph Marine, Inc. for claims asserted by plaintiff, Noel Butcher, for all attorneys' fees, costs, and other expenses incurred by Triumph herein.  Triumph Marine, Inc. further prays for all such other relief allowed in law, in contract, and for all such general and equitable relief as the Court may deem just under the circumstances.

Respectfully submitted,

**REICH, ALBUM & PLUNKETT, L.L.C.**

**/S/ ROBERT S. REICH**
**ROBERT S. REICH (#11163)**
**LAWRENCE R. PLUNKETT, JR. (#23869)**
1000 Two Lakeway Center
3850 North Causeway Boulevard
Metairie, Louisiana  70002
Tel: (504) 830-3999
Fax: (504) 830-3950
e-mail: rreich@rapllclaw.com
     lplunkett@rapllclaw.com
*Counsel for third party defendant,*
*Triumph Marine, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing pleading has been served on all counsel of record to this proceeding, via hand delivery, facsimile transmission, or electronic delivery, or by placing same in the U.S. mail, postage prepaid and properly addressed, this 14th day of September 2010.

/S/ ROBERT S. REICH

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NOEL BUTCHER** | * **CIVIL ACTION NO. 07-8136** |
| | *                **c/w 10-2826** |
| **VS.** | * **SECTION "R" MAG. 5** |
| | * |
| **SUPERIOR OFFSHORE** | * **JUDGE SARAH S. VANCE** |
| **INTERNATIONAL, LLC** | * |
| ************************************* | * **MAGISTRATE ALMA L. CHASEZ** |

**RULE 7.6E**

    **UNDERSIGNED** counsel certifies that prior to the filing of this Motion for Leave to File Amended Counterclaim against Superior Offshore International, LLC the consent of all parties was sought. Counsel for Superior Offshore International, LLC objected to the filing of this Motion. No other counsel objected to the filing of the Motion.

Respectfully submitted,

**REICH, ALBUM & PLUNKETT, L.L.C.**

**/S/ ROBERT S. REICH**
**ROBERT S. REICH (#11163)**
**LAWRENCE R. PLUNKETT, JR. (#23869)**
1000 Two Lakeway Center
3850 North Causeway Boulevard
Metairie, Louisiana 70002
Tel: (504) 830-3999
Fax: (504) 830-3950
e-mail: rreich@rapllclaw.com
        lplunkett@rapllclaw.com
*Counsel for third party defendant,*
*Triumph Marine, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing pleading has been served on all counsel of record to this proceeding, via hand delivery, facsimile transmission, or electronic delivery, or by placing same in the U.S. mail, postage prepaid and properly addressed, this 14th day of September 2010.

**/S/ ROBERT S. REICH**

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NOEL BUTCHER** | \* **CIVIL ACTION NO. 07-8136** |
| | \*        **c/w 10-2826** |
| **VS.** | \* **SECTION "R" MAG. 5** |
| | \* |
| **SUPERIOR OFFSHORE** | \* **JUDGE SARAH S. VANCE** |
| **INTERNATIONAL, LLC** | \* |
| **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** | \* **MAGISTRATE ALMA L. CHASEZ** |

### <u>NOTICE OF HEARING</u>

**NOTICE IS HEREBY GIVEN** that the Motion for Leave to File Amended Counterclaim filed by defendant, Triumph Marine, Inc., will be brought for hearing before the Honorable Magistrate Alma L. Chasez, United States Magistrate Judge, at the United States Courthouse, 500 Poydras Street, New Orleans, Louisiana on the 29th day of September 2010 at 11:00 a.m., or as soon thereafter as counsel may be heard.

Respectfully submitted,

**REICH, ALBUM & PLUNKETT, L.L.C.**

*/S/ ROBERT S. REICH*
**ROBERT S. REICH (#11163)**
**LAWRENCE R. PLUNKETT, JR (#19739)**
1000 Two Lakeway Center
3850 North Causeway Boulevard
Metairie, Louisiana 70002
Telephone: (504) 830-3999/Fax: (504) 830-3950
Email – rreich@rapllclaw.com
        lplunkett@rapllclaw.com
**Attorneys for defendant, Triumph Marine, Inc.**

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of the above and foregoing pleading has been served on all counsel of record to this proceeding, via hand delivery, facsimile transmission, or electronic delivery, or by placing same in the U.S. mail, postage prepaid and properly addressed, this 14th day of September 2010.

*/S/ ROBERT S. REICH*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRIUMPH MARINE, INC. | * | CIVIL ACTION NO. |
| VS. | * | SECTION " " MAG. |
| | * | |
| SUPERIOR OFFSHORE | * | JUDGE |
| INTERNATIONAL, LLC | * | |
| ************************************* | * | MAGISTRATE |

## COMPLAINT

**NOW INTO COURT** through undersigned counsel comes Triumph Marine, Inc. ("Triumph") and for its Complaint against Superior Offshore International, LLC ("Superior") avers upon information and belief as follows:

**1.**

This matter arises out of the Court's admiralty and maritime jurisdiction, 28 U.S.C. §1333.

**2.**

At all material times herein, Triumph was and is a corporation organized and existing under the laws of the State of Louisiana and doing business within the jurisdiction of this Honorable Court.

**3.**

At all material times herein, Superior was and is a limited liability company organized and existing under the laws of the State of Louisiana and doing business within the jurisdiction of this Honorable Court.

**4.**

On or about June 25, 2005, Noel Butcher, an employee of Superior Offshore International, LLC alleges he sustained an on the job injury. As a result of the alleged incident, Butcher filed suit against Triumph, among others, in the matter captioned "*Noel Butcher v. Superior Offshore International, LLC*", CA No.: 07-8136 c/w 10-2826, Section "R", Mag. (5), pending in the United States District Court for the Eastern District of Louisiana. Triumph has answered the Butcher Complaint denying any and all liability in connection with the alleged incident.

**5.**

At the time of the alleged June 25, 2005 incident involving Noel Butcher, Triumph was working as a subcontractor to Marlin Energy Offshore, L.L.C.

**6.**

At the time of the June 2005 incident involving Noel Butcher, Superior alleges that it was working pursuant to a verbal agreement with C.W. Technical Services, Inc. ("C.W."), a contractor and representative of Marlin Energy Offshore, L.L.C. ("Marlin").

**7.**

On or about October 21, 2004 Superior and Marlin entered into a Master Work Contract, that provides, *inter alia*, in Paragraph 12 that Superior's covenants, warranties, and indemnities of Superior apply not only when that contract is in force, but also whenever Superior is

performing services for Marlin or its duly authorized representatives; or is working on the same job as Marlin; or, when it has been hired by Marlin's duly authorized representatives.

**8.**

Pursuant to the October 21, 2004 Master Work Agreement, Superior is obligated to indemnify, defend, and hold harmless not only Marlin, but also its other contractors and subcontractors, including Triumph.

**9.**

Pursuant to the October 21, 2004 Master Work Agreement, Triumph is entitled to defense and indemnity from Superior either because Superior was working directly for Marlin, was working on the same job as Marlin; was working on the same job as Marlin's duly authorized representative; or was performing services for Marlin's duly authorized representative; or, was hired by Marlin's duly authorized representative.

**10.**

Pursuant to the terms of the October 21, 2004 Master Work Contract Superior is obligated to defend and indemnify Triumph for the claims asserted by plaintiff against Triumph.

**11.**

Triumph requests trial by jury.

**12.**

**WHEREFORE** after due proceedings had, Triumph Marine prays that there by judgment herein in its favor and against Superior Offshore International, LLC; that Superior Offshore International, LLC be cast in judgment and obligated to undertake the defense and fully indemnify Triumph Marine, Inc. for claims asserted by plaintiff, Noel Butcher, for all attorneys' fees, costs, and other expenses incurred by Triumph herein. Triumph Marine, Inc. further prays

for all such other relief allowed in law, in contract, and for all such general and equitable relief as the Court may deem just under the circumstances.

Respectfully submitted,

**REICH, ALBUM & PLUNKETT, L.L.C.**

_/s/ Robert S. Reich_
ROBERT S. REICH (#11163)
LAWRENCE R. PLUNKETT, JR. (#23869)
1000 Two Lakeway Center
3850 North Causeway Boulevard
Metairie, Louisiana  70002
Tel:  (504) 830-3999
Fax:  (504) 830-3950
e-mail: rreich@rapllclaw.com
          lplunkett@rapllclaw.com
**Counsel for Plaintiff, Triumph Marine, Inc.**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing pleading has been served on all counsel of record to this proceeding, via hand delivery, facsimile transmission, or electronic delivery, or by placing same in the U.S. mail, postage prepaid and properly addressed, this 25th day of October 2010.

_/s/ Robert S. Reich_